IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

THADDAEUS SNOW,                           )
                                          )
                                          )
            Movant,                       )
                                          )        No. 1:16-cv-428 (LMB)
                                          )        Crim. No. 1:13-cr-350-1 (LMB)
       v.                                 )
                                          )
UNITED STATES OF AMERICA,                 )
                                          )
            Respondent.                   )
                                          )

## MEMORANDUM OPINION

Before the Court is Thaddaeus Snow's ("Snow" or "movant") Motion under 28 U.S.C.

§ 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Dkt. No. 955]

("Motion to Vacate"), in which he argues that his convictions under Counts 8 and 11 for

violating 18 U.S.C. § 924(c) should be vacated in light of a line of cases including Johnson v.

United States, 135 S. Ct. 2551 (2015), in which the Supreme Court held that the residual clause

of 18 U.S.C. § 924(e)(2)'s definition of "violent felony" is unconstitutionally vague. He also

argues that all of his convictions should be vacated due to the ineffective assistance of counsel

and various other trial-related issues.[1] The government opposes the motion. For the reasons

stated below, Snow's motion will be dismissed as to all issues except for his conviction under

---

[1] Snow's initial motion was filed pro se; however, the Court subsequently appointed the Office
of the Federal Public Defender to represent Snow due to the complexity of the § 924(c) issues.
[Dkt. No. 1124]. That office submitted additional memoranda on Snow's behalf.

Count 11. As to that one claim, his motion will be granted, and his conviction for that count will be vacated.

## I. BACKGROUND

On August 29, 2013, a federal grand jury in the Eastern District of Virginia returned an indictment as to Snow, who was charged with being a member of a gang called the Nine Trey Gangster Bloods, along with 23 co-defendants. [Dkt. No. 1]. On September 26, 2013, the grand jury handed down a Superseding Indictment [Dkt. No. 112], which alleged that Snow joined the gang while incarcerated in North Carolina, and became a high-ranking gang leader and a recruiter upon his release, id. ¶ 14. The 14-count Superseding Indictment charged Snow with conspiracy to commit racketeering in violation of 18 U.S.C. § 1962(d) (Count 1); violence in aid of racketeering in violation of Va. Code § 18.2-51.2 and 18 U.S.C. § 1959(a)(2) (Count 2); conspiracy to distribute 280 grams or more of cocaine base in violation of 21 U.S.C. §§ 841 and 846 (Count 5); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count 8); conspiracy to commit sex trafficking in violation of 18 U.S.C. § 1594(c) (Count 9); conspiracy to commit robbery in violation of 18 U.S.C. § 1951 (Count 10); and possession of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A) (Count 11). The predicate offense for Count 8 was "conspiracy to distribute cocaine base and conspiracy to distribute marijuana," while the predicate offense for Count 11 was "conspiracy to interfere with commerce by robbery, as set forth in Count Ten." [Dkt. No. 112] at 31, 34.

On September 4, 2013, the Court appointed Michael S. Arif ("Arif") to represent Snow under the Criminal Justice Act. [Dkt. No. 59]. On October 25, 2013, Dimitri L. Willis ("Willis"), an associate with Arif's law firm, filed a notice of appearance as co-counsel for Snow. [Dkt. No.

180]. On February 6, 2014, Snow, Arif, and Willis appeared for a status hearing with one of

Snow's co-defendants, Curtis Martino ("Martino"). [Dkt. No. 551]. Snow planned to proceed

with trial, while Martino had pleaded guilty and decided to testify as a witness for the

government at trial. The hearing was called because the government learned on January 16, 2014

that Arif had previously represented Martino in a criminal matter in Fairfax County from 2005 to

2006. This prior representation did not come up during Arif's initial conflict check, because

Martino was using a different name when Arif represented him. [Dkt. No. 983] at 5:21-6:10.

Martino's counsel asserted that he had discussed the matter with Arif, and that they "were

satisfied there was no actual conflict" and that Martino's prior "offense had nothing to do with

the underlying charge here." Id. at 4:4-23. Both Martino's counsel and Arif confirmed that they

had discussed the issue with their clients, both of whom wished to waive any potential conflict or

privilege issues.[2] Id. at 4:23, 6:19-25.

     To ensure that Snow was waiving any conflict, the Court conducted a colloquy with

Martino and Snow "to find out for certain . . . whether there [wa]s any problem with this

situation." Id. at 7:4-6. Both defendants were placed under an affirmation to tell the truth. Id. at

7:9, 12:22. The Court first spoke with Martino, explained his rights and the implications of

waiving the attorney-client privilege as to any of his past communications with Arif, and made

clear that Martino, who had pleaded guilty, was "likely to be called as a witness in the trial

against Mr. Snow and the others." Id. at 7:12, 8:4-5. The Court then asked Martino's counsel and

the government whether they were satisfied with Martino's waiver. The government responded

---

[2] Snow now asserts that Arif never notified him of the full implications of this waiver, because Arif did not tell him that Martino was a cooperating witness for the government. See [Dkt. No. 956] at 8.

that it would be satisfied "[a]s long as [Martino] understands that Mr. Arif and Mr. Willis can

cross-examine him without any limitation." Id. at 10:4-6. Martino was asked whether he

understood "that that will be the effect of . . . waiving the attorney-client privilege as to Mr.

Arif," and Martino stated that he understood. Id. at 10:9-13. Based on his answers, Martino's

waiver of the attorney-client privilege was found to be knowing and voluntary. Id. at 10:22-11:2.

Snow, who had been present throughout the colloquy with Martino, was asked a series of

questions to determine if he was voluntarily and knowingly waiving any conflict:

> THE COURT: All right, now, Mr. Snow, did you carefully listen to the discussion
> I just had with Mr. Martino and the attorneys?
> DEFENDANT SNOW: Yes, ma'am.
> THE COURT: All right. And do you understand that you have an absolute right to
> what's called conflict-free representation? That means that you have a right to be
> represented by an attorney who has absolutely no conflict in the case. Do you
> understand that?
> DEFENDANT SNOW: Yes, ma'am.
> THE COURT: And do you understand that because Mr. Martino has waived the
> attorney-client privilege, he has, in essence, allowed Mr. Arif to use any and all
> information he has about Mr. Martino in this case? Do you understand that?
> DEFENDANT SNOW: Yes, ma'am.
> THE COURT: Nevertheless, I want to make sure, are you completely comfortable
> with Mr. Arif continuing to represent you in this case?
> DEFENDANT SNOW: Yes, ma'am.
> THE COURT: Now, do you understand that if you had any doubts or concerns
> about Mr. Arif being able to zealously defend you because of his former
> association with Mr. Martino, you could tell the Court you have that problem, and
> quite frankly, what we would have to do is we'd have to get new counsel for you,
> and, frankly, we couldn't try this case next week. I want you to understand that. In
> other words, I don't want you to feel that any decision you make today is being
> forced on you because you're worried about having to go to trial on Tuesday with
> an attorney who wouldn't have had enough time to prepare your defense. Do you
> understand that?
> DEFENDANT SNOW: I understand.
> THE COURT: Does that make any difference in terms of your thinking about this
> case?
> DEFENDANT SNOW: No, ma'am. I'm totally comfortable with him.
> THE COURT: Now, has anybody suggested to you in any respect that somehow
> you would get, you know, more favorable treatment or a better outcome if you go
> ahead and waive any conflict concerns that you have as to Mr. Arif's
> representation?

DEFENDANT SNOW: I cannot get no better treatment.

THE COURT: Has anyone put any force or pressure on you to waive any conflict that Mr. Arif might have?

DEFENDANT SNOW: No, ma'am.

THE COURT: And again, you don't feel that the time pressure of a trial on Tuesday has affected this decision; is that correct?

DEFENDANT SNOW: No, ma'am.

THE COURT: All right. Now, I want to make sure you understand this as well: If you wind up being convicted in this case, you will not be able to raise on appeal or in a collateral attack, that is, a habeas corpus proceeding, an argument that Mr. Arif had a conflict of interest and therefore was an ineffective attorney. You may have other issues about how he represents you, but I want you to understand that you would be waiving your right to argue that he had a conflict of interest as to Mr. Martino. Do you understand that?

DEFENDANT SNOW: Yes, ma'am, I understand.

THE COURT: And do you feel you've had enough time to thoroughly discuss with Mr. Arif your right to refuse to waive any conflict?

DEFENDANT SNOW: Yes, ma'am, he explained it to me.

THE COURT: And are you satisfied that he explained it to you adequately?

DEFENDANT SNOW: Yes, ma'am, I'm satisfied.

THE COURT: In any respect do you want to consult with an outside attorney who we would appoint for you to give you advice as to how you should proceed given Mr. Arif's situation?

DEFENDANT SNOW: No, ma'am.

THE COURT: All right. And again, just for the record, are you fully satisfied with the way Mr. Arif has been representing you?

DEFENDANT SNOW: I am fully satisfied.

THE COURT: And you want to continue with him as your attorney; is that correct?

DEFENDANT SNOW: Yes, ma'am.

Id. at 12:23-16:1. The Court also asked Arif about this issue, and Arif stated that he did not feel

he would have any difficulty zealously representing Snow. Id. at 16:7-11.

Based on these colloquies, the Court determined that any conflict had been waived, and

Snow went to trial, which began on February 11, 2014 and lasted for six days. During trial,

Arif's associate, Willis, cross-examined Martino. [Dkt. No. 699] at 603:1-610:20. On February

21, 2014, the jury convicted Snow of all seven counts with which he was charged. [Dkt. No.

599]. Before sentencing, Snow and two of his co-defendants moved for a new trial [Dkt. No.

621], which was denied [Dkt. No. 753].

As part of Snow's position on sentencing, Arif submitted an affidavit from Snow's co-defendant Devante Jordan, which Snow claims exonerated him from the conspiracy alleged in Count 10 and the firearm offense in Count 11. [Dkt. No. 746-1]. At the sentencing hearing, the government argued that this affidavit was "clearly false on its face," and actually demonstrated that Snow was continuing to play a gang leadership role which caused subordinate gang members like Jordan to be "more than willing to . . ., in our opinion, perjure themselves before the Court to try to curry favor with him." [Dkt. No. 801] at 9:2-12.

The Presentence Investigation Report ("PSIR") determined that Snow's total offense level was 42, and his criminal history category was IV, which resulted in an advisory guideline range of 360 months to life imprisonment. [Dkt. No. 740] at 28. On May 9, 2014, the Court sentenced Snow to a total of 480 months' imprisonment with credit for time served, which was the statutory mandatory minimum for Snow's offenses. The sentence consisted of concurrent sentences of 120 months as to Counts 1, 2, 5, 9, and 10, to be followed by a 60-month consecutive sentence as to Count 8, and a 300-month consecutive sentence as to Count 11. [Dkt. No. 751]. Snow was also sentenced to five years of supervised release and ordered to pay $700 in special assessments. Id. Based on these sentences, Snow's anticipated release date from prison is July 7, 2048. [Dkt. No. 1169] at 8 n.3.

Snow timely appealed his convictions. Arif represented him on appeal, and raised four procedural arguments: (1) that the Court erred in failing to order a mistrial after certain government witnesses allegedly violated the Court's sequestration order; (2) that the Court erred in allowing jurors access to certain unredacted transcripts that referenced Snow's previous incarceration on a misdemeanor charge; (3) that the jurors improperly discussed the case before the close of evidence; and (4) that at least one of the Court's jury instructions was erroneous.

6

Arif also raised one substantive argument: that the evidence was insufficient to support Snow's

firearm convictions. See No. 14-4379 [Dkt. No. 26]. The Fourth Circuit rejected all those

arguments and affirmed Snow's convictions. United States v. Snow, 595 F. App'x 223 (4th Cir.)

(per curiam). Snow filed a petition for certiorari before the Supreme Court, which was denied on

April 27, 2015. Snow v. United States, 575 U.S. 991 (2015).

On April 18, 2016, Snow filed a pro se § 2255 motion and addendum [Dkt. Nos. 955,

956], which he amended on June 13, 2016 [Dkt. No. 972]. The motion argued, in part, that

Snow's convictions under Counts 8 and 11 should be vacated in light of a series of cases

including Johnson v. United States, 135 S. Ct. 2551 (2015), in which the Supreme Court held

that the "residual clause" of 18 U.S.C. § 924(e)(2)'s definition of "violent felony" is

unconstitutionally vague.

Snow's motion also raised eight other grounds for relief. Specifically, Snow argued that

his deadline for filing a § 2255 motion should have been extended (Ground 1); that he was

deprived of effective assistance of counsel when Willis, instead of Arif, cross-examined Martino

and others (Ground 2); that the February 6, 2014 hearing at which Snow waived any potential

conflict based on Arif's prior representation of Martino was constitutionally deficient because

Snow was not aware at the time that Martino would be a cooperating witness for the government

(Ground 3); that Snow's waiver of conflict-free counsel was invalid because it did not expressly

include Willis (Ground 4); that Arif and Willis failed to inform Snow before trial of a plea offer

received from the government and failed to negotiate for a better plea offer (Ground 5); that there

were errors in the jury instructions (Ground 7); that Arif provided ineffective assistance of

counsel by failing to raise on appeal the affidavit purporting to exonerate Snow from Counts 10

and 11 (Ground 8); and that there was improper communication between witnesses during trial

7

(Ground 9). Snow's motion seeks a wide array of relief, including his immediate release from custody, a new trial, or an evidentiary hearing. See, e.g., [Dkt. No. 956] at 7. The government opposes the motion, and filed affidavits by Arif and Willis in support of its arguments. [Dkt. Nos. 997, 998]. Snow filed a reply in which he accuses Arif and Willis of perjury and states that they failed to adequately communicate with him during the proceedings. [Dkt. No. 1007]. Snow also filed two ex parte motions for discovery. [Dkt. Nos. 1002, 1005].[3]

On December 21, 2016, Snow's motions were stayed pending further guidance from the Supreme Court on the § 924(c) issues. [Dkt. No. 1020]. On April 17, 2018, the Supreme Court held that the residual clause of 18 U.S.C. § 16's definition of "crime of violence"—which is nearly identical to § 924(c)(3)'s residual clause—is unconstitutionally vague. Sessions v. Dimaya, 138 S. Ct. 1204, 1210 (2018). In the wake of Sessions, the stay was lifted, [Dkt. No. 1069], and the government moved to dismiss Snow's motion, which was fully briefed.

On February 19, 2019, given the complexity of the legal issues surrounding Snow's § 924(c) convictions, the Court granted Snow's motion to appoint the Office of the Federal Public Defender to represent him, and again stayed the motion to await additional guidance from the Supreme Court. [Dkt. No. 1124]. On June 24, 2019, the Supreme Court expanded its approach to the definition of crimes of violence by holding that the residual clause of § 924(c)(3)'s definition of "crime of violence" is also unconstitutionally vague. See United States v. Davis, 139 S. Ct. 2319, 2336 (2019). The next day, the stay was lifted and the parties were ordered to supplement their briefing on whether Snow would be entitled to § 2255 relief as to Count 11 and, if so, what

---

[3] Because additional discovery is unwarranted and would add nothing dispositive to the record, these motions will be denied.

form such relief should take. [Dkt. No. 1154]. The parties have filed supplemental briefing and this matter is now ripe for review.

Under 28 U.S.C. § 2255(b), a court must hold a hearing "[u]nless the motion and the files and records conclusively show that the prisoner is entitled to no relief." Id. In this case, the record is clear that Snow is entitled to relief as to Count 11 and is not entitled to relief on the remaining counts. Accordingly, no hearing his necessary.

## II.    DISCUSSION

### A.  Ground 1

In Ground 1 of his Motion to Vacate, Snow argues that his deadline for filing and amending his motion should be extended, and Arif should be ordered to provide him the full case file, because Arif "purposely withheld the case file," "withheld 45,530 pages of discovery documentation," and "misled Snow in a letter that the voluminous documentation would be arriving under separate cover, but . . . purposely never sent it to Snow." [Dkt. No. 956] at 1. This argument is both meritless and moot, because Snow has already timely filed his Motion to Vacate, the record indicates that Snow did in fact receive relevant documents from Arif, and the Court previously held that "defendant has received sufficient information to be able to file a § 2255 motion and . . . defendant's unreasonable delay in starting to gather that information will not entitle him to any extension of the one-year filing deadline." [Dkt. No. 952]. Accordingly, Ground 1 fails.

B. Grounds 2-5

In Grounds 2 through 5, Snow argues that his trial counsel was ineffective. These arguments lack merit.[4] To succeed on an ineffective assistance of counsel claim, Snow must satisfy the two-pronged test articulated in Strickland v. Washington, 466 U.S. 668, 687-88 (1984). First, he must establish that counsel's performance was constitutionally deficient. In evaluating this prong, "'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' in order to avoid 'the distorting effects of hindsight.'" Yarbrough v. Johnson, 520 F.3d 329, 337 (4th Cir. 2008) (quoting Strickland, 466 U.S. at 689). Second, he must show that this deficient performance prejudiced him, or that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Snow has not satisfied either the performance or prejudice prongs of this test, or any other variation of the test described below.

1. Ground 2

Snow first argues that Arif had a conflict of interest based on his prior representation of Martino.[5] "[T]he possibility of conflict is insufficient to impugn a criminal conviction." Cuyler v. Sullivan, 446 U.S. 335, 350 (1980). Instead, to succeed on this ground, Snow needs to establish

---

[4] Snow's arguments with respect to ineffective assistance of counsel are not procedurally barred because the "Supreme Court has made clear that ineffective assistance challenges brought under the aegis of § 2255 are not themselves susceptible to procedural default." United States v. Fugit, 703 F.3d 248, 259 (4th Cir. 2012) (citing Massaro v. United States, 538 U.S. 500, 503–04, (2003)).

[5] Although Snow clearly waived this argument during his pretrial colloquy concerning potential conflict, it will nevertheless be addressed on its merits.

that "(1) his attorney labored under 'an actual conflict of interest' that (2) 'adversely affected his lawyer's performance.'" Mickens v. Taylor, 240 F.3d 348, 355 (4th Cir. 2001), aff'd, 535 U.S. 162 (2002) (quoting Cuyler, 446 U.S. at 348). If Snow "satisfies this showing, prejudice is presumed, and [he] need not demonstrate a reasonable probability that, but for counsel's conflicted representation, the outcome of the proceeding would have been different." Woodfolk v. Maynard, 857 F.3d 531, 553 (4th Cir. 2017).

To meet the first prong of this test, Snow "must show that his interests diverged from his attorney's with respect to a material factual or legal issue or to a course of action." Stephens v. Branker, 570 F.3d 198, 209 (4th Cir. 2009) (internal quotations and alterations omitted). To satisfy the second prong, Snow "must identify a plausible alternative defense strategy or tactic that his defense counsel might have pursued," "show that the alternative strategy or tactic was objectively reasonable under the facts of the case known to the attorney at the time of the attorney's tactical decision," and "establish that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict." Mickens, 240 F. 3d at 361. Snow "is not required to show that the strategy or tactic not taken would have been successful, but only that it would have been objectively reasonable." United States v. Nicholson, 475 F.3d 241, 252 (4th Cir. 2007).

Snow has not satisfied this test. Snow's principal complaint in Ground 2 is that Willis, instead of Arif, cross-examined Martino. Specifically, Snow asserts that Arif's decision to have Willis conduct that cross-examination "was a deceitfully-tricky well-plotted maneuver to sabotage [his] defense" and a "breach of [Snow's] waiver of conflict-free counsel." [Dkt. No. 956] at 7. These conclusory assertions aside, there is nothing to suggest that Snow's interests diverged from Arif's or Willis's with respect to a material issue or course of action. First, there is

no indication that Arif or Willis harbored any bias in favor of Martino; in fact, Arif stated at the

February 6 conflict hearing that he "had absolutely no recollection of Mr. Martino . . . zero, none

at all. In fact, when [Martino] came in this morning, [Arif] didn't even recognize him." [Dkt. No.

529] at 6:7-10. Moreover, there is no reason to believe that Arif chose to have Willis cross-

examine Martino because of any bias in favor of Martino or that Arif would have been any more

effective at cross-examination than Willis. In fact, Willis's cross-examination appears to have

been quite effective: for example, he asked about Martino's criminal history and attempted to

undermine Martino's credibility by demonstrating inconsistencies between Martino's in-court

testimony and prior statements to the government. See, e.g., [Dkt. No. 778] at 604:6-10 ("Q: So

when you testified here today that you knew about that, you would be lying? A: No, I wasn't

lying. I wasn't lying today, no. Q: You were lying to investigators then? A: Yes, I was.").

Nor has Snow presented a plausible alternative cross-examination strategy. Snow appears

to be suggesting that had Arif cross-examined Martino, Arif would have made use of helpful

confidential information obtained from their prior relationship, but it is not clear what, if any,

fruitful information Arif's representation of Martino in an unrelated matter would have

produced. There is also no indication that Arif decided to have Willis cross-examine Martino

because Arif was intending to "sabotage" Snow's defense or because of any conflict; instead, the

record shows that Arif and Willis divided up the cross-examinations between them roughly

equally, which is a reasonable and common approach for defense counsel to take in a complex

case. If anything, Arif's decision to have Willis conduct the cross-examination suggests an effort

to avoid any possibility of being accused of failing to cross-examine Martino with sufficient

vigor due to their prior relationship. For these reasons, Ground 2 fails.

2.  Ground 3

In Ground 3, Snow claims that his waiver of Arif's alleged conflict of interest was not valid, because the hearing was deficient and he was not aware at the time that Martino was a cooperating witness for the government. This argument is strongly contradicted by the record. "A defendant may waive his Sixth Amendment right to an attorney who is free from conflicts of interest . . ., so long as his waiver is knowing, intelligent, and voluntary." United States v. Edelen, 561 F. App'x 226, 231 (4th Cir. 2014) (internal quotations and citations omitted). "[I]f a defendant waives the conflict with knowledge of the crux of the conflict and an understanding of its implications, the waiver is valid—even if the defendant does not know each detail concerning the conflict." United States v. Brown, 202 F.3d 691, 698 (4th Cir. 2000) (emphasis in original).

As an initial matter, the record from the conflict hearing is clear that Snow was fully advised of the potential conflict and knowingly and voluntarily waived any conflict. The Court explained to Snow that he had an "absolute right" to conflict-free representation and that if he had "any doubts or concerns about Mr. Arif being able to zealously defend" him, the Court would appoint new counsel and continue the trial to allow new counsel to prepare a defense. [Dkt. No. 983] at 12-16. In the conflict colloquy, Snow, who was under an affirmation to tell the truth, admitted that he understood his rights, felt comfortable continuing with Arif, was not pressured into making that decision, understood that waiving the potential conflict would mean waiving the right to argue in a collateral attack that Arif was ineffective because of that potential conflict, and was satisfied with Arif's performance. Id.

Although Snow now argues that when he entered his waiver, he was not aware "that Martino would be testifying against [him] rather than sitting beside [him] at the trial," [Dkt. No. 956] at 8, during the conflict hearing, at which Snow was present, the Court made clear that

Martino had pleaded guilty, and that Martino was "likely to be called as a witness in the trial against Mr. Snow and the others." [Dkt. No. 983] at 7:19, 8:4-5 (emphasis added). Snow admitted under oath that he had been "carefully listen[ing]" to the colloquy with Martino. Id. at 12:23-13:1. As the Fourth Circuit has observed in the analogous plea colloquy context, "[a]bsent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath." Fields v. Attorney Gen., of Md., 956 F.2d 1290, 1299 (4th Cir. 1992). The Supreme Court has also explained that "[s]olemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." Blackledge v. Allison, 431 U.S. 63, 74 (1977). Snow's responses to the Court's questions were made under an affirmation to tell the truth and as such, he cannot now disavow them. See United States v. Smith, 113 F. Supp. 2d 879, 915 (E.D. Va. 1999). For these reasons, Ground 3 fails.

### 3.   Ground 4

In Ground 4, Snow claims that because the Court did not explicitly ask him to waive any conflict with respect to Willis, his waiver was invalid. This argument fails because there is no indication that Willis personally had any conflict. For example, there is no evidence in the record that Willis had previously represented Martino or any of Snow's co-defendants. In fact, Willis avers in his affidavit that he was not employed by Arif when Arif represented Martino.[6] [Dkt. No. 997-1] ¶ 20. Therefore, any potential conflict would only apply to Willis to the extent it

---

[6] In his affidavit, Willis states that he graduated from the American University Washington College of Law in 2009 and joined Arif's law firm him October 2009. [Dkt. No. 997-1] ¶¶ 2, 3. Arif represented Martino in the 2005 to 2006 time period.

could be imputed to him through Arif. After Snow waived any potential conflict arising out of Arif's prior representation of Martino, there was no remaining conflict to be imputed to Willis. Moreover, any claim that Snow was unaware at the conflict hearing that Willis would be involved in his case is contradicted by the record. Although Snow states that "[t]o [his] recollection, Attorney Willis was not present," [Dkt. No. 956] at 10, the transcript shows that Willis was indeed present, and Arif actually noted Willis's appearance for the record [Dkt. No. 983] at 2:13-14. In addition, during the hearing, the government stated that it would be satisfied with Martino's waiver of privilege "[a]s long as he understands that Mr. Arif and Mr. Willis can cross-examine him without any limitation," and Martino stated that he understood. [Dkt. No. 983] at 10:4-13 (emphasis added). Snow was present for this exchange, and later affirmed that he "carefully listen[ed] to the discussion [the Court] just had with Mr. Martino and the attorneys." Id. at 12:23-13:1.

Snow also suggests that Willis was not authorized to participate in his defense at all because he was not specifically appointed by the Court and Snow did not expressly agree to Willis's participation in the case, but this argument, too, is unavailing. Although there are limits on the extent to which additional associates may be compensated under the Criminal Justice Act ("CJA"), see, e.g., Guide to Judiciary Policy, Vol. 7A, § 230.53, nothing bars attorneys appointed under the CJA from relying on the assistance of other counsel. Moreover, although Snow claims that Willis was "not even on the record as a lawyer representing [him]," [Dkt. No. 956] at 6, Willis entered his appearance on behalf of Snow on October 25, 2013, less than two months after Arif was appointed, and several months before the conflict hearing. [Dkt. No. 180]. For these reasons, Ground 4 fails.

### 4. Ground 5

Snow argues that Arif and Willis were ineffective because they neglected to inform him before trial of a plea offer in which the government would recommend that Snow be sentenced to "somewhere between 25 and 30 years [of incarceration] with cooperation," and failed to "negotiate with the government for a better plea offer." [7] [Dkt. No. 956] at 11. Willis has submitted an affidavit stating that he communicated a plea offer from the government[8] to Snow before trial, which "would have involved Mr. Snow pleading guilty to the two firearm counts . . . and cooperating with the government, in exchange for dismissal of other counts in the indictment." [Dkt. No. 997-1] ¶¶ 12-18. Arif submitted an affidavit stating that although he does not have "any independent recollection of any specific discussions about a plea offer from the United States to Mr. Snow," he is "confident that, pursuant to [his] standard practice, if [he] had received a plea offer from counsel for the United States . . . [he] would have communicated that offer to Mr. Snow, or would have asked . . . Willis . . . to do so." [Dkt. No. 997-2] ¶ 15. Snow has submitted a contrary affidavit[9] and has accused Arif and Willis of perjury in submitting their

---

[7] In support of his contention that he was unaware of any plea offer until after sentencing, Snow points to the transcript of his May 9, 2014 sentencing proceeding, in which he stated "I was never offered anything less than a life sentence. I was never offered anything," and "[t]hat's probably why they never offered me a plea, because they know I ain't going to testify against myself." [Dkt. No. 801] at 14:2-4, 19:8-10.

[8] The government has not submitted an affidavit from the prosecutor confirming that a plea offer was made.

[9] Conflicting affidavits sometimes require an evidentiary hearing to determine which affiant is credible, Strong v. Johnson, 495 F.3d 134, 139 (4th Cir. 2007); however, in this case, the credibility of the affidavits is not dispositive. Even presuming that Snow's affidavit is more credible than Arif's and Willis's and that he did not learn of the plea offer until after sentencing, Snow cannot demonstrate prejudice on this basis. Accordingly, no evidentiary hearing is necessary.

affidavits. He also suggests that log books from the Alexandria Detention Center would show that Arif and Willis had only limited contact with him. [Dkt. No. 1007] at 1-2, 4-6.

Even assuming Snow is correct that Arif and Willis failed to communicate a plea offer to him before trial, "[t]o show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, [a] defendant[] must demonstrate a reasonable probability [he] would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel." Missouri v. Frye, 566 U.S. 134, 147 (2012). Snow cannot satisfy this requirement, because both Willis and Snow admit that the only possible plea offer at issue in this case would have required Snow to cooperate with the government, and Snow indicates at least six times in his motion that he would not have accepted any plea that required his cooperation. See [Dkt. No. 956] at 11 ("Had I been advised of the plea offer, I would have definitely instructed my Attorney Arif to enter into negotiations with the government to secure a more lenient sentence without a cooperation clause attached to it."); id. at 12 ("[I] told my attorney that I would take a plea but not a plea with cooperation."); id. ("[H]ad he advised me of this offer, I would have insisted that he negotiate for a better plea offer without the cooperation."); id. ("[B]ecause he had not notified me of this offer, I could not direct him to negotiate a better plea offer without the cooperation clause."); [Dkt. No. 1007] at 21 ("Had Snow been advised of the plea offer, he would have definitely instructed attorneys Arif and or Willis to enter into negotiations for a better plea offer minus the cooperation clause."); id. at 22 ("Snow was never against his entry into a plea agreement with the government as long as it did not include a stipulation for cooperation."). Snow has not only failed to demonstrate a reasonable probability that he would have accepted the offer; in fact, he has made abundantly clear that he would have rejected it.

17

Snow also claims that Arif and Willis were ineffective for failing to negotiate a better plea deal for him, but there is "no right to receive a favorable plea offer." Parada-Mendoza v. United States, No. 1:08-cr-132, 2014 WL 6609294, at \*2 (E.D. Va. Nov. 20, 2014) (citing Weatherford v. Bursey, 429 U.S. 545, 561 (1977); United States v. Bissette, 30 F.3d 131 (4th Cir. 1994) (unpublished opinion)). Nor has Snow shown a reasonable probability that absent ineffective performance, "the government would have in fact made him a particular plea offer." Young v. United States, No. 2:09-cr-223-01, 2016 WL 5496517, at \*9 (S.D.W. Va. Sept. 29, 2016), aff'd, 685 F. App'x 181 (4th Cir. 2017). The majority of Snow's co-defendants who pleaded guilty, many of whom were significantly less involved in the alleged criminal activity than he was, did so under an agreement requiring them to cooperate with the government. As the government argues, "there is no basis in the record to suggest that the [g]overnment would have offered Petitioner — the [alleged] ringleader of a large, long-running, and violent conspiracy, who was charged with 7 counts — any terms more favorable than the '25 to 30 years with cooperation' he cites in his petition." [Dkt. No. 997] at 15. At bottom, because Snow "has failed to allege that he was actually offered a plea on terms he would accept, according to his own admissions," Arif and Willis were "not objectively unreasonable for failing to secure him a favorable plea." Parada-Mendoza, 2014 WL 6609294, at \*3. For these reasons, Ground 5 fails.

C. Ground 6

Snow argues that he is entitled to relief on his § 924(c) conviction under Count 11. Section 924(c) forbids the use, carrying, or brandishing of a firearm "during and in relation to any crime of violence." 18 U.S.C. § 924(c)(1)(A). It defines "crime of violence" as any felony offense that (A) "has as an element the use, attempted use, or threatened use of physical force against the person or property of another" or (B) "by its nature . . . involves a substantial risk that

18

physical force against the person or property of another may be used in the course of committing the offense." Id. § 924(c)(3). Subsection (A) of the definition is known as the "force" clause; subsection (B) is known as the "residual" clause.

After Davis, § 924(c)(3)'s residual clause cannot support Snow's Count 11 conviction. The conviction could stand if the predicate offense underlying Count 11, conspiracy to commit Hobbs Act robbery, were a "crime of violence" under the force clause of § 924(c)(3), but the Fourth Circuit recently held in United States v. Simms that conspiracy to commit Hobbs Act robbery does not so qualify. United States v. Simms, 914 F.3d 229, 232 (4th Cir.), cert. denied, 140 S. Ct. 304, 205 L. Ed. 2d 196 (2019). The government concedes this point, but nonetheless argues that Snow cannot obtain relief because he procedurally defaulted this claim by failing to argue in his direct appeal that conspiracy to commit Hobbs Act robbery was an invalid § 924(c) predicate. The government further argues that Snow cannot satisfy either of the showings necessary to overcome a procedural default: cause and prejudice or actual innocence. Bousley v. United States, 523 U.S. 614, 621-22 (1998). Neither argument is persuasive.

First, the government argues that Snow cannot show he is actually innocent of violating § 924(c) because "[u]nder principles of co-conspirator liability as articulated in Pinkerton v. United States, 328 U.S. 640 (1946), [Snow] remains guilty because he is liable for the substantive Hobbs Act robbery committed by his co-conspirators and that robbery is a proper predicate under § 924(c)(3)(A)." [Dkt. No. 1169] at 4. For the reasons stated in Blackman v. United States, No. 1:12-cr-507, slip op. at 4-6 (E.D. Va. Aug. 6, 2019), this argument fails. Neither the original nor the superseding indictment charged Snow with substantive Hobbs Act robbery. Although the Fourth Circuit upheld Snow's § 924(c) conviction, ruling that he could be held liable for his coconspirators' reasonably foreseeable possession of firearms in furtherance of

19

the conspiracy, "that ruling speaks to which, if any, of his coconspirators' acts can be used to

support a finding of guilt with respect to the offenses for which he was charged. It does not

address using his coconspirators' acts to assert that he is guilty of an offense for which he was

not charged—a startling proposition which runs headlong into the longstanding rule that 'only

the grand jury may broaden or alter the charges in the indictment.'" Id. (quoting United States v.

Randall, 171 F.3d 195, 203 (4th Cir. 1999)). For these reasons, the government's argument with

respect to actual innocence fails.

The government also argues that Snow cannot overcome procedural default by showing

cause and prejudice.[10] This argument fails. "Cause for default is established when 'a

constitutional claim is so novel that its legal basis [wa]s not reasonably available to counsel' at

the time of the default." Royer v. United States, 324 F. Supp. 3d 719, 735 (E.D. Va. 2018)

(alteration in original) (quoting Reed v. Ross, 468 U.S. 1, 16 (1984)). For the reasons discussed

in Royer, the Johnson decision was a "bolt of lightning from the clear blue sky," developing a

line of reasoning "so novel that it was not reasonably available to counsel" at the time Snow

brought his appeal in 2014, see United States v. Grogans, No. 7:11-cr-21, 2017 WL 946312, at

*5 (W.D. Va. Mar. 9, 2017). Because the government concedes that the predicate offense

underlying Count 11 is not a crime of violence under either § 924(c)(3)'s force or residual

clauses, and Snow was sentenced to 300 months' imprisonment on Count 11, he has shown

prejudice. See Blackman, No. 1:12-cr-507 at 6. For these reasons, procedural default is not a

barrier to Snow's collateral attack as to his conviction for Count 11. The other arguments the

---

[10] The government articulated its cause-and-prejudice argument in its initial memoranda, see
[Dkt. Nos. 1094, 1103], but does not rearticulate it in its latest memoranda, see [Dkt. Nos. 1169,
1174]. Although it appears that the government may have abandoned this argument, it will
nonetheless be addressed on the merits.

government previously articulated were mooted by <u>Davis</u> and <u>Simms</u>, and the government has made no other arguments that would sustain Snow's conviction on Count 11. Therefore, ground 6 is meritorious and the conviction for Count 11 must be vacated.[11]

### D.  <u>Ground 8</u>[12]

Snow claims that Arif was ineffective in prosecuting his appeal because he failed to raise the alleged exculpatory affidavit of Devonte Jordan, who averred that Snow was not involved in the conspiracy to commit robbery that supported Count 10. [Dkt. No. 956]. This argument does not meet the <u>Strickland</u> test. To establish that an appellate counsel was ineffective for neglecting to pursue an issue on direct appeal, a movant must first show that his "counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688. Counsel is "not obligated to assert all nonfrivolous issues on appeal," <u>Bell v. Jarvis</u>, 236 F.3d 149, 164 (4th Cir. 2000), and courts presume that the appellate counsel "decided which issues were most likely to afford relief on appeal," <u>Pruett v. Thompson</u>, 996 F.2d 1560, 1568 (4th Cir. 1993). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." <u>Smith v. Robbins</u>, 528 U.S. 259, 288 (2000) (internal quotation marks and citation omitted).

---

[11] Snow argues that <u>Johnson</u> and its progeny also require the Court to vacate his § 924(c) conviction under Count 8. He is incorrect. Section 924(c)(1) applies to two kinds of crimes—crimes of violence and drug trafficking crimes. The predicate offense for Count 8 was a drug trafficking crime. Neither the <u>Johnson</u>, <u>Sessions</u>, <u>Davis</u>, nor <u>Simms</u> decisions addressed the drug trafficking crime predicate. In fact, the Fourth Circuit in <u>Simms</u> expressly stated that it was "leav[ing] intact" "the entirety of the definition of 'drug trafficking crime' in § 924(c)." <u>Simms</u>, 914 F.3d at 252. The holdings in those cases therefore do not support vacating Snow's conviction on Count 8.

[12] Because Snow concedes "that this Court should dismiss" Ground 7, in which he claimed that there were issues with the jury instructions given during his trial, Ground 7 will be dismissed. <u>See</u> [Dkt. No. 1007] at 33.

Snow has not shown that Arif's selection of the issues he raised on appeal was objectively unreasonable. On appeal, Arif argued that Snow was denied his right to a fair trial due to errors in the proceedings, including that the jury had access to unredacted transcripts which referenced Snow's prior incarceration on a misdemeanor charge and that jurors' allegedly discussed the case before the close of evidence. He also argued that Snow's Sixth Amendment right to an impartial jury was violated due to improper jury instructions and that witnesses for the government were improperly permitted to discuss the case with each other. It was not objectively unreasonable for Arif to have chosen to focus on these colorable arguments instead of on a questionable post-trial affidavit. In the instant motion, Snow attempts to relitigate at least one of the issues Arif raised on appeal, namely the alleged failure to segregate witnesses, which suggests that even he believes that issue was worth appealing.

Nor can Snow show that he was prejudiced by Arif's failure to raise the affidavit issue on appeal. Arif appears to have "[w]innow[ed] out weaker arguments on appeal and focus[ed] on those more likely to prevail." Smith v. Murray, 477 U.S. 527, 536 (1986) (internal quotation marks and citation omitted). "[F]ar from being evidence of incompetence, [such behavior] is the hallmark of effective appellate advocacy." Id. Raising the affidavit on appeal would have been a risky legal strategy, particularly given that in its sentencing memorandum the government persuasively argued that the affidavit was "demonstrably false," "of no legal significance," and "wholly inconsistent with the facts [Jordan] agreed to himself during his guilty plea."[Dkt. No. 747] at 2-4. The government also argued that the affidavit "prove[s] that . . . Snow is a feared and respected gang leader. Even after his conviction, he seemingly continues to interact with gang members like Jordan and is able to exert influence and control over them. Jordan's affidavit serves no purpose to Jordan other than to curry favour with . . . Snow." Id. at 4. Presenting such a

meritless issue on appeal risked tainting the merits of the other issues. Choosing to avoid that issue was neither unreasonable nor prejudicial. For these reasons, Ground 8 fails.

E. Ground 9

In Ground 9, Snow argues that the government and the United States Marshals Service failed to properly segregate witnesses during his trial, which resulted in improper communication and collusion between witnesses, and that he is therefore entitled to a new trial. As discussed above, Snow raised the same issue on direct appeal, and the Fourth Circuit rejected it. "[I]ssues already fully litigated on direct appeal may not be raised again under the guise of a collateral attack." Schoolfield v. United States, No. 2:17-cr-116, 2019 WL 5929258, at *2 (E.D. Va. Nov. 12, 2019) (quoting United States v. Dyess, 730 F.3d 354, 360 (4th Cir. 2013)). Snow claims that "the direct appeal did not attack th[e] issue [of the government and United States Marshals Service's failure to segregate in-custody witnesses] at all," [Dkt. No. 1007] at 34, but this is incorrect. Appellants' brief before the Fourth Circuit specifically argued that many of the witnesses were housed in the same area of the jail, which resulted in improper communication between them in violation of the Court's rule on witnesses, and that the Court therefore should have granted a mistrial. No. 14-4379 [Dkt. No. 26] at 43-47. The Fourth Circuit specifically addressed and rejected this argument, finding that the evidence Snow presented did "not plainly indicate that any witnesses discussed the case after the district court issued its sequestration order or that any violations that may have occurred were sufficiently severe to require mistrial." [Dkt. No. 861] at 3-4. Because Snow already effectively litigated Ground 9 on direct appeal, he is not entitled to raise it under the guise of a collateral attack. Even to the extent the argument in Snow's § 2255 motion is somewhat different from the argument he previously made before the

23

Fourth Circuit, Snow has not made the requisite showings to overcome procedural default on this issue. For these reasons, Ground 9 fails.

### III.   REMEDY

Having found that the conviction for Count 11 must be vacated, the remaining issue is how to address Snow's sentence. "[T]he end result of a successful § 2255 proceeding must be the vacatur of the prisoner's unlawful sentence (and perhaps one or more of his convictions) and one of the following: (1) the prisoner's release, (2) the grant of a future new trial to the prisoner, (3) or a new sentence, be it imposed by (a) a resentencing or (b) a corrected sentence." United States v. Hadden, 475 F.3d 652, 661 (4th Cir. 2007). Snow argues that the Court should simply vacate his conviction on Count 11 and the accompanying 300-month sentence and issue a corrected sentence, but states that in the alternative, the Court should conduct a resentencing. The government urges the Court to conduct a resentencing, and states that if a resentencing is conducted, it will seek a firearm enhancement on Snow's remaining counts of conviction.

The Court finds that vacating the conviction without conducting a resentencing is the most appropriate outcome. Even after his conviction under Count 11 is vacated, Snow will still have to complete the remainder of his 180-month sentence, which is among the longest sentences imposed on the various defendants in this case. Although there are two co-defendants who received longer sentences, both of those individuals had criminal history categories of VI, while Snow's criminal history category was only IV. Moreover, one of those two co-defendants' sentences was subsequently significantly reduced. The Office of the Federal Public Defender has also submitted a variety of documents indicating that Snow has undergone significant rehabilitation during his time in prison, including by completing educational courses, obtaining a paying job to enable him to send money to support his family, and serving as a peer mentor in

24

prison. Based on these factors, the Court finds that a sentence of 180 months is sufficient but not greater than necessary to serve the statutory purposes of sentencing under 18 U.S.C. § 3553(a).

IV.    CONCLUSION

For the foregoing reasons, Snow has not demonstrated that he is entitled to relief on any of his claims except for his collateral attack on his conviction under Count 11 of the Superseding Indictment. Accordingly, Snow's Motion to Vacate will be granted as to Count 11 and dismissed in all other respects, his conviction under Count 11 will be vacated by an Order to be issued with this Memorandum Opinion, and a corrected judgment will be entered to reflect the resulting sentence.[13]

Entered this 15 day of April, 2020.

Alexandria, Virginia

/s/ _____
Leonie M. Brinkema
United States District Judge

---

[13] The Judgment entered in this case on May 9, 2014 refers to the counts of conviction by adding an "s" to reflect the Superseding Indictment. The count being vacated is shown as Count 11s.